UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BECCA COLLAZO,

     Plaintiff,

v.                                                                  Case No:   2:16-cv-636-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Becca Collazo's Complaint (Doc. 1) filed on

August 15, 2016.  Plaintiff seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("SSA") denying her claim for supplemental security income.

The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr."

followed by the appropriate page number), and the parties filed legal memoranda in support of

their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED**

pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.       **Social Security Act Eligibility, Procedural History, the ALJ's Decision, and
Standard of Review**

     A.     **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment that can be expected to result in

death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.  The

impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.    Procedural History

On May 30, 2012, Plaintiff filed an application for supplemental security income benefits asserting an onset date of April 1, 2012.  (Tr. at 199).  Plaintiff's application was denied initially on June 28, 2012, and upon reconsideration on September 10, 2012.  (Tr. at 115-16).  An Administrative Law Judge ("ALJ"), James G. Myles, conducted a video hearing on January 29, 2015.  (Tr. at 70-104).  ALJ Myles issued an unfavorable decision on March 13, 2015.  (Tr. at 17-35).  The ALJ found Plaintiff had not been under a disability since May 30, 2012, the date Plaintiff's application was filed.  (Tr. at 30).

On June 29, 2016, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-6).  Plaintiff filed a Complaint (Doc. 1) in this Court on August 15, 2016.  Defendant filed an Answer (Doc. 13) on November 15, 2016.  The parties filed memoranda in support.  (Docs. 21-22).  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 16).  This case is ripe for review.

### C.    Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1,

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 30, 2012, the application date. (Tr. at 22). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "obesity, obstructive sleep apnea, residuals from a motor vehicle accident resulting in low back pain, depression, schizophrenia and a bi-polar disorder." (Tr. at 22). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (Tr. at 23).

Based on the evidence, the ALJ determined that Plaintiff had the RFC to perform "medium work" as defined in 20 C.F.R. § 416.967(c) with some additional exceptions. (Tr. at 24). Specifically, the ALJ found:

> [D]ue to a combination of her impairments, after an hour on her feet, the claimant would need an option to work seated or to rest for two minutes. She should have no concentrated exposure to hazards. There should be restroom access to the work area. Unskilled and only superficial interpersonal contact, with no teams or working with the public as far as critical job duties other than superficial. Based upon her mental impairments, socially the claimant could cooperate on simple, routine tasks. Accept directions and feedback. Should would be able to interact

---

2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

appropriately despite her mood depression.  Should would have limited tolerance
for frequent recurrent contact with the general public or function best with teams
with modest social demands.

(Tr. at 24-25).

At step four, the ALJ determined that Plaintiff is unable to perform her past relevant work as a fast food worker.  (Tr. at 28).  The ALJ noted that Plaintiff has past relevant work as a fast food worker, *Dictionary of Occupational Titles* #311.472-010, exertionally light and unskilled with a specific vocational preparation code of two.  (Tr. at 28).  The ALJ stated that Plaintiff's "past relevant work involved working in team or as a crew member, which is outside the scope of her current residual functional capacity."  (Tr. at 28).  Thus, the ALJ found that Plaintiff is unable to perform her past relevant work.  (Tr. at 28).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. at 29).  Specifically, the ALJ noted the vocational expert's ("VE") testimony that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as a hospital cleaner, *Dictionary of Occupational Titles* ("DOT") #323.687-010 (nationally 92,000 and regionally 7,000).  (Tr. at 29).  Additionally, the VE testified that, at the light level of exertion, the hypothetical individual would be able to perform the requirements of other representative occupations such as:  sorter of agricultural produce, DOT #529.687-186 (nationally 15,000 and regionally 1,000); housekeeping cleaner, DOT #323.687.014 (nationally 83,000 and regionally 7,000); and marker in the retail setting, DOT # 209.587-034 (nationally 27,000 and regionally 1,700).  (Tr. at 29).  Nonetheless, the ALJ found "there would be some slight need for erosion of some of these, due to the interaction with customers, that would erode these numbers by 10 percent."  (Tr. at 29).

Pursuant to Social Security Ruling ("SSR") 00-4p, the ALJ found the VE's testimony to be consistent with the information contained in the DOT. (Tr. at 29). Based on the VE's testimony and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. at 30). The ALJ determined, therefore, that a finding of "not disabled" was appropriate. (Tr. at 30).

Accordingly, the ALJ concluded that Plaintiff had not been under a disability since May 30, 2012, the date Plaintiff's application was filed. (Tr. at 30).

### D.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II.      Analysis

On appeal, Plaintiff raises three issues:

(1) The ALJ's finding at step five is not supported by substantial evidence because the ALJ did not adequately account for Plaintiff's severe mental impairments when he assessed overly vague limitations in the [RFC] assessment and failed to state in adequate vocational terms what her work limitations would be, in violation of [SSR] 96-8p.

(2) The ALJ erred by failing to adequately consider Plaintiff's medically determinable impairments of obesity and sleep apnea and did not sufficiently evaluate the impact of those conditions in assessing the Plaintiff's work capacity, in violation of SSRs 02-1p and 96-8p.

(3) The ALJ's credibility assessment of Plaintiff is not supported by substantial evidence because the ALJ improperly discredited Plaintiff based on her family status and required objective findings to support subjective mental limitations, in violation of 20 C.F.R. § 416.929(c)(1)-(3), SSR 85-15.

(Doc. 21 at 1).

### A.      Whether the ALJ Adequately Accounted for Plaintiff's Severe Mental Impairments in the RFC

Plaintiff first contends that the ALJ's finding at step five is not supported by substantial evidence. (Doc. 21 at 6). Plaintiff argues that the ALJ did not adequately account for Plaintiff's severe mental impairments when he assessed – what she contends – are overly vague limitations in the RFC assessment. (*Id.*). Additionally, Plaintiff argues that the ALJ failed to state in adequate vocational terms what Plaintiff's work limitations would be, in violation of SSR 96-8p and 20 C.F.R. § 416.945(a)(1). (*Id.*).

Specifically, Plaintiff contends that "it is unclear what exactly the ALJ means be [sic] 'limited tolerance' and 'frequent recurrent contact.'" (*Id.* at 8 (citing Tr. at 25)). Plaintiff argues

that this limitation is vague because "the ALJ failed to define exactly how 'limited' Plaintiff's tolerance for public contact is." (*Id.*). Plaintiff argues that "[b]y failing to specify the degree or limitation, the ALJ shifted the interpretation of that term to the vocational expert, which is improper, as the RFC determination is reserved to the ALJ and the Agency, not the vocational expert." (*Id.*). Plaintiff contends that "[t]his is no different than the ALJ finding that Plaintiff has some type of limitation in dealing with the general public," which general finding Plaintiff contends is insufficient. (*Id.*).

Similarly, Plaintiff argues that "it is unclear exactly what the ALJ means by 'or function best with teams with modest social demands.'" (*Id.* (citing Tr. at 25)). Plaintiff argues that the term "modest" is overly vague and "does not specify how frequently or extensively Plaintiff could interact with coworkers." (*Id.* at 8-9). Plaintiff argues that "[a] valid function by function analysis was not performed in assessing the RFC." (*Id.* at 9).

In sum, Plaintiff argues that "the RFC is invalid is because it does not contain a comprehensive function by function assessment of limitations stemming from Plaintiff's mental impairments." (*Id.*). Moreover, Plaintiff argues that "the hypothetical question posed to the vocational expert incorporating the limitations found in the RFC does not contain all of the specific limitations arising from Plaintiff's impairments." (*Id.*). As a result, Plaintiff argues that "the RFC assessment and vocational expert testimony are not supported by substantial evidence." (*Id.*). Moreover, Plaintiff argues that "[t]he error is harmful because the impact of Plaintiff's specific mental limitations adversely affect her ability to perform other work available in significant numbers in the national economy." (*Id.*).

Defendant disagrees, arguing that substantial evidence supports the ALJ's assessment of Plaintiff's RFC because he adequately described Plaintiff's functional limitations. (Doc. 22 at 6-

13). Further, Defendant points out that "Plaintiff's counsel stipulated to the expert qualifications of the VE at the hearing (Tr. 91) and did not object to the ALJ's hypothetical questions for vagueness (Tr. 93-94) and the VE understood the ALJ's questions (Tr. 95-98)." (Doc. 22 at 13). Defendant argues that "the clear implication from these facts is that the words used in the ALJ's RFC provided sufficiently clear information for the VE to respond rationally to the hypothetical questions (Tr. 95-98)." (Doc. 22 at 13-14).

Although Defendant contends that the ALJ did not err, Defendant nonetheless concedes that "it appears the ALJ's RFC may contain typographical and spelling errors." (*Id.* at 14). Specifically, Defendant notes that "[t]he wording and punctuation in the ALJ's hypothetical questions to the VE (given verbally and transcribed) is slightly different from the RFC in the decision." (*Id.* at 14 (internal citations omitted)). Despite these discrepancies, however, Defendant argues that, "[c]ollectively, the facts show the ALJ's hypothetical was not deficient for vagueness, is supported by substantial evidence and should be affirmed." (*Id.*).

In reviewing this issue, the Court notes that "the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments." *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1545(a)); *see also* 20 C.F.R. § 416.945(a) (same). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." SSR 96-8p, 1996 WL 374184, at *1. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.*

In this case, the ALJ made a number of findings in the RFC assessment. (Tr. at 24-25). In fact, the ALJ made specific findings in the RFC assessment related to Plaintiff's mental impairments. (*See id.*). Specifically, as to Plaintiff's mental impairments, the ALJ found:

Unskilled and only superficial interpersonal contact, with no teams or working with the public as far as critical job duties other than superficial. Based upon her mental impairments, socially the claimant could cooperate on simple, routine tasks. Accept directions and feedback. Should would be able to interact appropriately despite her mood depression. Should would have limited tolerance for frequent recurrent contact with the general public or function best with teams with modest social demands.

(Tr. at 24-25).

Notwithstanding these findings by the ALJ, Plaintiff nonetheless argues that the ALJ's RFC findings are invalid because (1) the RFC assessment does not contain a valid function by function assessment of Plaintiff's impairments and (2) the hypothetical question to the VE did not incorporate all of Plaintiff's limitations. (*See* Doc. 21 at 9).

As to Plaintiff's first argument, Plaintiff's primary contention is that the ALJ assessed overly vague limitations in the RFC. (*Id.* at 6). Plaintiff cites *Olsen v. Astrue*, 858 F. Supp. 2d 1306, 1306 (M.D. Fla. 2012), in support of her argument that the RFC findings were overly vague. (*Id.* at 8). In *Olsen*, the Court reversed and remanded the decision of the Commissioner, in part, based on the ALJ's failure to pose a hypothetical question to the VE that specifically accounted for the plaintiff's mental limitations. 858 F. Supp. 2d at 1320. The Court noted the ALJ's finding at the administrative level that the claimant "had the RFC to perform a full range of work at all exertional levels, but was restricted to unskilled work and occasional contact with the public." *Id.* at 1317. The Court found, however, that the ALJ "failed to make findings sufficient for the Court to ascertain whether the restriction to unskilled work limited by occasional contact with the public, as stated in the RFC and the hypothetical question, adequately encompassed Plaintiff's severe mental impairment." *Id.* at 1320. Thus, the Court found the ALJ's decision not to be fully supported by substantial evidence. *Id.*

The Court finds Plaintiff's reliance on *Olsen* to be inapposite. Contrary to Plaintiff's contention, the *Olsen* decision is not concerned with vagueness of the RFC but instead addresses whether the ALJ made sufficient findings for the Court to determine whether the restrictions in the RFC assessment adequately encompassed the plaintiff's severe mental impairment. *See id.* While vagueness and the sufficiency of factual findings may be related, they are not the same concept. Moreover, unlike *Olsen*, the ALJ here included specific factual findings related to Plaintiff's mental impairments in the RFC assessment. (*See* Tr. at 24-25). In contrast, the ALJ in *Olsen* only found that the claimant "had the RFC to perform a full range of work at all exertional levels, but was restricted to unskilled work and occasional contact with the public." 858 F. Supp. 2d at 1317. Because the ALJ here made specific findings related to Plaintiff's mental impairments, *Olsen* is distinguishable. *See id.*

Plaintiff does not point to any other authority supporting Plaintiff's position that the ALJ failed to adequately assess her work-related abilities on a function by function basis due to vagueness. (*See* Doc. 21 at 9-11). This is important because Plaintiff takes issue with specific parts of the RFC assessment. (*See id.* at 8). For instance, Plaintiff contends that "it is unclear what exactly the ALJ means" by certain terms he included in the RFC such as "limited tolerance," "frequent recurrent contact," and "modest." *Id.* Plaintiff argues that "[b]y failing to specify the degree or limitation, the ALJ shifted the interpretation of that term to the vocational expert, which is improper, as the RFC determination is reserved to the ALJ and the Agency, not the vocational expert." (*Id.*). Nonetheless, Plaintiff does not cite any legal authority in support of these arguments. The Court, therefore, cannot conclude that the RFC assessment was improperly vague or that the ALJ failed to account for Plaintiff's mental impairments.

As to Plaintiff's second contention, that the hypothetical question to the VE did not incorporate all of Plaintiff's limitations, the Court notes that when an "ALJ elects to use a vocational testimony to introduce independent evidence of the existence of work that a claimant could perform, the ALJ must pose a hypothetical question that encompasses all of the claimant's severe impairments in order for the VE's testimony to constitute substantial evidence." *Olsen*, 858 F. Supp. 2d at 1318 (citing *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985)). Nonetheless, "when the ALJ relies on the testimony of a VE, 'the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical posed to the VE' rather than the RFC simply cited in the ALJ's decision." *Brunson v. Astrue*, 850 F. Supp. 2d 1293, 1303 (M.D. Fla. 2011) (quoting *Corbitt v. Astrue*, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008)).

Here, the Court cannot find that the RFC description was inadequate because the hypothetical question to the VE at the hearing expressly included limitations related Plaintiff's severe mental impairments. *See Olsen*, 858 F. Supp. 2d at 1318; *Brunson*, 850 F. Supp. 2d at 1303. Specifically, at the hearing, the ALJ asked the VE multiple hypothetical questions. (Tr. at 93). The hypothetical questions appear to include all of the limitations the ALJ ultimately assessed in the RFC assessment in his decision, including those the ALJ attributed to Plaintiff's mental impairments. (*See* Tr. at 24-25, 93-97). As a result, it appears the ALJ posed hypothetical questions that encompassed all of Plaintiff's severe impairments. Thus, the VE's testimony may constitute substantial evidence. *See Olsen*, 858 F. Supp. 2d at 1318.

As to the adequacy of the RFC description, the Court finds that it cannot conclude the RFC description was inadequate. By way of example, there is no indication in the record that the VE failed to understand the ALJ's questions. (*See* Tr. at 95-98). In fact, when the VE expressed

uncertainty regarding the ALJ's use of the word "superficial" in one hypothetical question, the VE sought to clarify the terminology. (Tr. at 93-94). The VE used the hypothetical questions posed by the ALJ and opined as to the jobs Plaintiff can perform. (*See* Tr. at 93-98). The Court cannot conclude that the RFC description contained in the hypothetical posed to the VE was inadequate. *See Brunson*, 850 F. Supp. 2d at 1303.

This is not to say, however, that the ALJ's RFC assessment is without issue. As Defendant concedes, for instance, "the ALJ's RFC may contain typographical and spelling errors." (Doc. 22 at 14 (internal citations omitted)). For example, the ALJ's hypothetical questions to the VE at the hearing included limitations that Plaintiff could not work in teams "as part of critical job duties other than in a superficial manner" and also that "[Plaintiff] may . . . function best at *things* with modest social demands." (Tr. at 93, 97 (emphasis added)). In contrast, the ALJ's RFC finding in the decision states that Plaintiff would "function best with *teams* with modest social demands." (Tr. at 25 (emphasis added)). While it is certainly possible to read these findings in harmony and/or to chalk these discrepancies up to typographical or spelling errors, the ALJ's RFC finding is not entirely consistent with the hypothetical question to the VE. (*See* Doc. 21 at 8-9). Notwithstanding any inconsistency, however, the Court concludes that any potential error is harmless.

Specifically, the Court notes that "the burden temporarily shifts at step five to the Commissioner." *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). At step five, "[t]he Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id.* (citing *Jones*, 190 F.3d at 1228). Nonetheless, the Eleventh Circuit has stated that "[i]n order to be considered disabled, the claimant must then

prove that he is unable to perform the jobs that the Commissioner lists." *Id.* (citing *Jones*, 190 F.3d at 1228). The Court further notes that an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

In this case, the Commissioner, relying on the testimony of the VE, listed a number of jobs that Plaintiff could perform. (Tr. at 29). Plaintiff, however, did not explain why she could not perform the jobs listed. Thus, Plaintiff has not met her burden of proving that she cannot perform any the jobs listed by the Commissioner based on her mental impairments. *See Doughty*, 245 F.3d at 1278 n.2. As a result, the Court cannot conclude that any error here is harmful. *See Denomme*, 518 F. App'x at 877-78.

In sum, the Court cannot conclude that the ALJ erred in assessing Plaintiff's severe mental impairments in the RFC assessment. Accordingly, the Court affirms the ALJ's decision as to this issue.

**B.     The ALJ's Review of Plaintiff's Obesity and Sleep Apnea**

The Court next addresses Plaintiff's contention that the ALJ did not adequately consider her medically determinable impairments of obesity and sleep apnea or the impact of those conditions in assessing her work capacity. (Doc. 21 at 9). Specifically, Plaintiff argues that she was consistently noted to have a body mass index ("BMI") of greater than 40, placing her in the extreme range for obesity. (*Id.* at 10 (citing Tr. at 390, 393, 556)). Plaintiff further states that her weight was noted to be a contributing factor to her sleep apnea and corresponding daytime somnolence. (*Id.* (citing Tr. at 390, 398, 408)). Additionally, Plaintiff argues that her multiple

psychotropic medications appear to be a significant factor in her obesity. (*Id.* at 11 (citing Tr. at 452)).

Despite these issues, Plaintiff contends that, while the ALJ acknowledged Plaintiff's obesity at step two and restated her BMI, the ALJ "did not describe what limitations he believed were related to Plaintiff's obesity or how her obesity and sleep apnea acted in combination with other impairments." (*Id.* (citations omitted)). Moreover, Plaintiff argues that "[t]here is no logical discussion of how the conditions might impact Plaintiff's ability to work." (*Id.*). Plaintiff argues that "for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." (*Id.* (citation omitted)). Here, however, because the hypothetical question and RFC did not account for Plaintiff's obesity and sleep apnea, Plaintiff argues that "the denial of the claim based upon the VE's testimony is not supported by substantial evidence." (*Id.*).

Defendant disagrees, arguing that the ALJ adequately considered Plaintiff's obesity and sleep apnea impairments. (Doc. 22 at 14). Specifically, Defendant contends that Plaintiff never alleged disability or any specific limitations due to her obesity or sleep apnea. (*Id.* (citing Tr. at 253)). Moreover, Defendant argues that diagnoses do not establish limitations. (*Id.* at 15 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005))). As a result, Defendant argues that the fact that the ALJ found Plaintiff's obesity and sleep apnea to be severe impairments does not undermine the ALJ's subsequent findings regarding Plaintiff's RFC and ability to perform other work. (*Id.*). Thus, Defendant argues that the ALJ's findings are supported by substantial evidence and, therefore, should stand. (*See id.* at 16).

The Court first addresses Plaintiff's arguments regarding her obesity. On this point, the Court notes that an ALJ must consider obesity as an impairment when evaluating a claimant's

disability.  *See* SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2000).  While it is the ALJ's responsibility to find that obesity is a medically determinable impairment, the burden is on Plaintiff to establish that her obesity results in functional limitations, and that she is disabled under the Social Security Act.  *See* 20 C.F.R. § 416.912(a), (c) (2016) (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"); *see also Flynn v. Heckler*, 768 F.2d 1273, 1274 (11th Cir. 1985) (noting claimant "bears the burden of demonstrating that the Secretary's decision . . . is not supported by substantial evidence").[2]

A review of the analogous case law is helpful on this issue.  In *Castel v. Commissioner of Social Security*, for instance, the Eleventh Circuit affirmed the ALJ's consideration of the claimant's obesity.  355 F. App'x 260, 264 (11th Cir. 2009).  In *Castel*, the claimant argued that the ALJ failed to consider her obesity in combination with other impairments and failed to specify any functional limitations resulting from her severe impairment of obesity.  *Id.*  The Eleventh Circuit, however, found no error because the "record reflect[ed] that the ALJ considered [the claimant's] obesity[,]" and "the ALJ made specific reference to SSR 02-1p in his ruling."  *Id.*  Thus, despite the ALJ determining that obesity was a severe impairment, the court found that the ALJ did not err because the medical evidence did not support "specific functional limitations" attributable to obesity.  *See id.*

Similarly, in *Vickers v. Astrue*, the court affirmed the ALJ's obesity determination.  No. 3:08CV78/MCR/EMT, 2009 WL 722273, at *14 (N.D. Fla. Mar. 18, 2009).  In *Vickers*, the court

_____

[2] The Court notes that these regulations were recently revised.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).

noted that ALJ did not even mention the claimant's obesity. 2009 WL 722273, at *14. Nonetheless, the court found no error in the ALJ's decision because the claimant did not show he had any limitations related to his obesity. *See id.*

Additionally, in *Ingram v. Astrue*, No. 8:07-cv-1591-JDW-TBM, 2008 WL 2943287, at *6 (M.D. Fla. July 30, 2008), this Court affirmed the ALJ's consideration of the claimant's obesity. *Id.* There, the claimant's weight was noted repeatedly throughout the record, but the ALJ failed to mention the claimant's obesity or to address it in accordance with SSR 02-1p. *Id.* Despite this failure, the Court found that the error did not constitute grounds for reversal because the claimant had not identified any evidence suggesting that his RFC was affected by his obesity. *See id.*

In the present case, the record reflects that the ALJ reviewed all of the relevant evidence of record regarding Plaintiff's obesity, and considered her obesity in the context of her other health problems. (*See* Tr. at 22-28). Specifically, the ALJ found Plaintiff's obesity to be a severe impairment at step two and also considered her obesity at step three. (Tr. at 22-23). Moreover, the ALJ specifically stated that, pursuant to SSR 02-1p, Plaintiff's "obesity has been considered and this [RFC] is consistent with her activities." (Tr. at 23). In *Castel*, the ALJ's consideration of the claimant's obesity was found to be sufficient when the record showed that the ALJ specifically considered Plaintiff's obesity and also that he made specific reference to SSR 02-1p in his ruling. *See* 355 F. App'x at 264. Here, as in *Castel*, the ALJ specifically considered Plaintiff's obesity and also specifically referenced SSR 02-1p in his ruling. (*See* Tr. at 23). Thus, the Court is persuaded by the reasoning in *Castel* and finds that the ALJ's treatment of Plaintiff's obesity was sufficient. *See* 355 F. App'x at 264. There is no indication

from the record that the ALJ failed to consider Plaintiff's obesity in determining that Plaintiff has the RFC to perform medium work with some additional exceptions. (*See* Tr. at 24-25).

Furthermore, as in *Vickers* and *Ingram*, Plaintiff has failed to show any additional limitations resulting from her obesity. *See* 2009 WL 722273, at *14; 2008 WL 2943287, at *6. Specifically, while Plaintiff states that her obesity might be linked to her sleep apnea and that her psychotropic medications may contribute to her obesity, Plaintiff does not suggest that these issues affect her ability to work, nor does Plaintiff explain how the ALJ's RFC determination fails to account for these issues. (*See* Doc. 21 at 10-11). Thus, the ALJ did not err in reviewing Plaintiff's obesity.

Turning to the issue of Plaintiff's sleep apnea, the Court finds that Plaintiff has failed to show any additional limitations related to her sleep apnea. Specifically, a RFC is the most Plaintiff can do despite her limitations. 20 C.F.R. § 416.945(a)(1). Moreover, diagnoses do not establish limitations. *Moore*, 405 F.3d at 1213 n.6. Here, while the ALJ found Plaintiff's medically determinable impairment of sleep apnea to be severe, (Tr. at 22), the ALJ nonetheless noted that Plaintiff had received treatment for sleep apnea, (Tr. at 27 (citing *e.g.*, Tr. at 410-11)). The ALJ further cited treatment notes showing that Plaintiff was compliant with treatment and had shown positive results from the treatment. (Tr. at 27 (citing, *e.g.*, Tr. at 410-11)). The Court finds that the ALJ cited substantial evidence of record supporting his decision not to assign additional limitations related to Plaintiff's sleep apnea. Accordingly, the Court finds that Plaintiff has not shown that her sleep apnea caused more limitations than what the ALJ assigned in the RFC assessment. The ALJ, therefore, did not err on this ground.

As a final matter, the Court notes that "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all

of the claimant's impairments."  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

Here, Plaintiff contends that the ALJ erred because the hypothetical question to the VE did not

include all of Plaintiff's limitations, specifically those impairments related to her obesity and/or

sleep apnea.  (Doc. 21 at 11).  As stated above, however, Plaintiff has not demonstrated that she

has any additional limitations related to her obesity or sleep apnea.  Moreover, it appears that all

of the impairments ultimately included in the ALJ's RFC assessment were included in the

hypothetical questions to the VE at the hearing.  (*See* Tr. at 93-98).  Thus, the Court cannot find

that the ALJ erred on this ground.

Accordingly, the Court finds that the ALJ properly considered Plaintiff's obesity and

sleep apnea, and the Court affirms the ALJ's decision on this issue.

### C.  **Plaintiff's Credibility**

Finally, Plaintiff argues that the ALJ improperly discredited her credibility (1) based on

her family status and (2) by requiring objective findings to support her subjective mental

limitations.  (Doc. 21 at 11).

In looking at the ALJ's credibility determination, the Court notes that to establish

disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of

the following three-part test:  "(1) evidence of an underlying medical condition; and (2) either (a)

objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively

determined medical condition can reasonably be expected to give rise to the claimed pain."

*Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).  After

an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them, and that

determination will be reviewed to determine if it is based on substantial evidence.  *Moreno v.

Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839

(11th Cir. 1992)).  If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."  *Wilson*, 284 F.3d at 1225 (internal citations omitted).  Nevertheless, the Eleventh Circuit has stated that "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."  *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The factors an ALJ considers in evaluating a plaintiff's subjective symptoms include:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; *see also* SSR 16-3p, 2016 WL 1119029, at *7 (factors nearly identical to SSR 96-7p); *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Foote*, 67 F.3d at 1562.

In looking at Plaintiff's credibility, the ALJ gave three reasons for finding Plaintiff's testimony less than credible.  (*See* Tr. at 26-28).  The ALJ cited (1) the conservative nature of

Plaintiff's medical care; (2) the limited objective medical findings; and (3) Plaintiff's admitted activities all diminished Plaintiff's credibility. (Tr. at 28). The Court addresses each reason the ALJ gave in turn below.

### i. The Conservative Nature of Plaintiff's Medical Care

Plaintiff argues that the ALJ's assessment for this reason is not supported by substantial evidence. (*See* Doc. 21 at 12). Specifically, Plaintiff states that she has a lengthy history of medication trials. (*Id.* (citing Tr. at 544)). Additionally, Plaintiff states that, during the relevant period, she frequently changed medications and dosages. (*Id.* (citing *e.g.*, Tr. at 424, 433). Plaintiff further states that she treated with multiple antipsychotic agents and persisted on the regimen despite significant side effects, including weight gain. (*Id.* (citing Tr. at 450)). Plaintiff further argues that she had two inpatient hospitalizations for mental impairments lasting several days. (*Id.* at 12-13). As a result, Plaintiff argues that she has sought aggressive medical intervention for her mental impairments and, "[b]y any measure, Plaintiff has sought all treatment that is available to her." (*Id.* at 13).

Defendant disagrees, arguing that substantial evidence supports the ALJ's findings. (Doc. 22 at 16). Defendant states that, excluding Plaintiff's hospital admissions, "Plaintiff's treatment consisted of medication management and office follow-up visits." (*Id.* at 17). Thus, Defendant argues that "[t]he conservative nature of Plaintiff's medical care provides further evidence that her condition was not as limiting as she claimed." (*Id.* (internal citations omitted)).

On this point, the Court does not reweigh factual evidence, but instead only addresses whether the ALJ applied the correct legal standard and whether the findings are supported by substantial evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *McRoberts*,

841 F.2d at 1080; *Richardson*, 402 U.S. at 390. Here, substantial evidence supports the ALJ's conclusions regarding the conservative nature of Plaintiff's treatment.

In making this finding, the Eleventh Circuit's decision in *Pennington v. Commissioner of Social Security*, 652 F. App'x 862, 873 (11th Cir. 2016), is instructive. In *Pennington*, the court affirmed the ALJ's credibility determination. *Id.* There, the evidence showed that the claimant's pain was partially relieved by medication. *Id.* The court found that this evidence suggested that the claimant's treatment was conservative because the claimant's symptoms were being managed adequately. *Id.* Thus, the court held that "there was more than a scintilla of evidence to support the ALJ's conclusion [the claimant's] conservative treatment undermined his testimony about the severity of his symptoms." *Id.* (citing *Winschel*, 631 F.3d at 1178). Accordingly, the court found that this reason given by the ALJ for discounting the claimant's credibility was supported by substantial evidence. *See id.* (citations omitted).

In discounting Plaintiff's credibility, the ALJ here found that when Plaintiff was "compliant with taking her medications, the claimant's psychiatric symptoms are significantly reduced or completely diminished." (Tr. at 28). The ALJ cited treatment notes in support of this finding. (*See* Tr. at 26-27 (citing Tr. at 370)). Similar to *Pennington*, the Court finds that these treatment notes provide evidence of record suggesting that Plaintiff's symptoms were partially relieved by medication. *See* 652 F. App'x at 873. Accordingly, like *Pennington*, because the evidence suggests that Plaintiff's symptoms were partially relieved by medication, the record supports a finding that Plaintiff's treatment was conservative because her symptoms were being managed adequately. *See id.* Although Plaintiff cites other evidence which would support an alternative finding, the ALJ's citations to relevant evidence of record provide more than a scintilla of evidence in support of the ALJ's conclusion that Plaintiff's conservative treatment

undermined Plaintiff's testimony regarding the severity of her symptoms. *See Pennington*, 652 F. App'x at 873. Thus, as in *Pennington*, the Court finds that this reason given by the ALJ for discounting Plaintiff's credibility is supported by substantial evidence. *See* 652 F. App'x at 873. The Court, therefore, cannot find that the ALJ was clearly wrong to discredit Plaintiff on this basis. *See Werner*, 421 F. App'x at 939.

ii.    *The Limited Objective Medical Findings*

Plaintiff next argues that the ALJ's finding that there are "limited objective medical findings" is not supported by the record. (Doc. 21 at 13). Plaintiff notes that "[m]ental impairments inherently have limited objective medical evidence surrounding them." (*Id.*). Notwithstanding this limitation, Plaintiff contends that the only objective evidence available – Plaintiff's mental status examinations – routinely show abnormal findings throughout the relevant period. (*Id.* (citing Tr. at 419, 422-23, 432, 436, 441, 446, 450, 463, 468, 526-27, 534, 541, 545, 550)). Moreover, Plaintiff argues that "the professional judgment of Plaintiff's psychiatrists, to constantly change medications and dosages, provides an objective basis for concluding that Plaintiff's mental impairments were not under satisfactory control." (*Id.* at 13). Thus, Plaintiff argues that the ALJ's finding of "insufficient objective medical data" is not supported by substantial evidence. (*Id.* at 13-14).

Defendant disagrees, arguing that "[t]he objective medical findings . . . do not establish that Plaintiff's condition was as limiting as she alleged." (Doc. 22 at 17 (citing Tr. at 28-34)). Defendant states that "[d]iagnostic studies conducted and obtained by Plaintiff's doctors also did not reveal abnormalities that would support Plaintiff's allegations of disabling or additional limitations." (*Id.* (citing Tr. at 22-28)). Further, Defendant states that, while Plaintiff had two hospitalizations due to mental impairment, the hospitalizations occurred when Plaintiff "lacked

or failed to take prescribed medication." (*Id.* (citing Tr. at 26)). Defendant further argues that Plaintiff's symptoms related to her hospitalization "diminished or were eliminated with medication management." (*Id.* (citing Tr. at 26)). Moreover, while not cited by the ALJ as a reason for discrediting Plaintiff, Defendant argues that "no treating or examining doctor imposed limitations on Plaintiff's ability to work, which further supports the ALJ's determination that Plaintiff's subjective complaints were not entirely credible." (*Id.* (citation omitted)).

In reviewing this reason given by the ALJ, the Court notes Plaintiff's contention that the available objective evidence, her mental status evaluation, showed abnormal findings. (Doc. 21 at 13 (citations to the record omitted)). A review of the mental status evaluations cited by Plaintiff, however, fails to show any significant abnormalities. For instance, while Plaintiff's mood/affect was, at times, noted to be depressed and anxious, (*see, e.g.*, Tr. at 436), the mental status evaluations routinely showed that Plaintiff's judgment and insight were good, her thoughts and perception were logical and goal directed, normal speech, and no suicidal ideation, (*see* Tr. at 435-36). Moreover, Plaintiff did not describe what was abnormal about these mental status evaluations, nor did she cite other objective findings to support her contention. (*See* Doc. 21 at 13). Without adequate support, the Court cannot find that the ALJ was clearly wrong to discredit Plaintiff's testimony on this basis. *See Werner*, 421 F. App'x at 939.

### iii. *Plaintiff's Admitted Activities*

Finally, Plaintiff argues that the ALJ's finding that "Plaintiff's daily activities are inconsistent with disability, is not supported by substantial evidence." (Doc. 21 at 14). Plaintiff argues that despite the ALJ noting that "Plaintiff is a 'homemaker' and is able to care for the needs of her five children," the record nonetheless demonstrates that "Plaintiff was living with her parents, who are assisting with her children." (*Id.* (citing Tr. at 77)). Due to the help from

her parents, Plaintiff argues that "the ALJ's observation that she is a homemaker is somewhat of a mischaracterization." (*Id.*). Moreover, Plaintiff notes that three of her children are "self-sufficient teenagers, and all of the children were school-aged." (*Id.*). Plaintiff argues that her "family status in this case and her activities related to her status as a parent do not reflect negatively on her disability claim" and that "[t]he mundane daily activities cited by the ALJ do not contradict Plaintiff's testimony regarding her severe mental illness and are not supportive of his finding that she can return to full time work activity." (*Id.*). Plaintiff argues that "the activities listed are not equivalent to performing work activity" and, therefore, "the credibility assessment is not supported by substantial evidence." (*Id.*).

Defendant disagrees, arguing that, "[a]lthough not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as alleged." (Doc. 22 at 17 (citing 20 C.F.R. § 416.929(c)(3)(i); SSR 96-7p; *Dyer*, 395 F.3d at 1212; *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987))).

On this point, the Court notes that participation in everyday activities of short duration, such as housework or fishing, does not necessarily disqualify a claimant from disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Nonetheless, a Plaintiff's activities may be considered in evaluating a claimant's credibility. *See Dyer*, 395 F.3d at 1212; SSR 96-7p, 1996 WL 374186, at *3; *see also* SSR 16-3p, 2016 WL 1119029, at *7.

In this case, while Plaintiff makes a compelling argument that the ALJ failed to consider the help Plaintiff receives from her family and/or that three of her children are self-sufficient teenagers, the ALJ was not wrong to consider Plaintiff's activities as a part of his credibility determination of Plaintiff. *See Dyer*, 395 F.3d at 1212. Moreover, given that the ALJ reviewed

the entire record, the Court cannot find that the ALJ was clearly wrong to discredit Plaintiff's testimony on this basis. *See Werner*, 421 F. App'x at 939.

*iv.      Conclusion Regarding the ALJ's Credibility Determination*

In sum, the ALJ articulated clear reasons for discounting Plaintiff's credibility. (*See* Tr. at 28). Moreover, the Court cannot find that the ALJ was clearly wrong to discredit Plaintiff's testimony on these bases. *See Wilson*, 284 F.3d at 1225. Accordingly, the ALJ's credibility determination is affirmed. *See id.*

## III.      Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 28, 2017.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties